Good morning and welcome to the old federal building here in Anchorage. It's a pleasure to be here. Judge Pius and Nguyen and I are delighted to be in Anchorage to hear the oral arguments this week and today we have our docket begins with United States of America versus Clyde McKnight and that case has been submitted on the briefs so I believe we can proceed with the next case set for oral argument which is Keane-Alexander Crawford versus Arnaldo Hernandez so if the council ready to proceed you may come forward please state your appearance and yes thank you thank you your honor good morning my name is Dan Paulson I am the assistant federal defender representing Keane Alexander Crawford I'll just get into it over 35 years ago in a versus Oklahoma the United States Supreme Court recognized that when an indigent defendant can make a showing that his mental state is going to be a significant factor at trial the Constitution requires at minimum that the state provide the defendant with access to a competent mental health professional who can assist the defense in the evaluation preparation and presentation of the defense case this is a habeas appeal which raises the question of whether the Alaska Court of Appeals unreasonably applied a when it of expert funds to a pro se defendant he was representing himself on charges of first-degree murder there are three reasons three arguments for why the Court of Appeals decision represents an unreasonable application of clearly established federal law first the Alaska Court of Appeals was unreasonable to assume that a pro se defendant like mr. Crawford is not entitled to expert funds under a the respondent is essentially arguing for an exception to the rule in ache that would well did the state court said he wasn't entitled to it or that he hadn't made the showing necessary to secure it well and that's the second point I want to raise which is that the Alaska Court of Appeals I think was unreasonable in holding that mr. Crawford's requests were insufficient to trigger the protections of ache and he had somehow failed to establish that his mental state at the time the offense was going to be a significant factor at trial that was an unreasonable application of ache and I think that the Court of Appeals applied a standard that that was his mental state going to be an unreasonable application of ache and I think the trial judge remarked towards the end of trial that mr. that this was a case about mr. Crawford's being choked unconscious that his consciousness or on lack of consciousness in the immediate aftermath of the assault by the alleged victim was an important factor that was the heart of the the self-defense class was he charged with first-degree murder he was and he was found not guilty on first-degree murder and convicted on first-degree or second-degree murder correct yes was his mental state an issue in either of those crimes I think it yeah I think it goes without saying that the government has the burden of proving that he acted with the requisite mental state but I think especially in a self-defense case where he has the burden of showing that he was reasonable in his belief that his life was in danger and where he's made repeated showings and I can go over that with you but there were many opportunities many many opportunities for the trial court to rule on mr. Crawford's requests for expert funds that was the later stricken notice of experts differentiated between a psychiatrist and a medical expert on the physical effects I think was the word words used of strangulation and loss of consciousness and I just wanted to ask you how does that factor into our analysis regarding whether Crawford properly invoked his ache rights to a I think the respondent is arguing for I think in their brief they're arguing that ache is limited to just psychiatric psychiatric witnesses our position is that that is a far too narrow reading of ache I don't think you can confine ache to just the the specific facts of that case and just just to reflect you know ache is a case involving an insanity defense in a capital case and the expert was necessary for the guilt face of the proceedings and Nick Williams versus done however you have a question of an expert witness being called for the point is that you can apply ache to different you know procedural contexts and the important part I think when you read McWilliams and ache is that the court is not really hung up on the credentials of the expert whether it's a neuropsychiatrist or a neurologist or a psychiatrist ultimately the question is has the defendant established that their mental state is going to be a significant factor at trial such that a mental health professional and expert is necessary to ensure that the outcome of the proceeding is fair that we have confidence in the verdict as it turned out at trial was his mental state explored I mean he testified at trial and he elaborated on what was going through his mind I think that and to be clear I think the Court of Appeals was unreasonable to say that he just didn't place the issue in question if you look at for example on August 10th mr. Crawford files a notice with the court asking for expert funds under Alaska administrative rule 12e 5 gets a denial from the trial court on September 2nd saying that no court funds are going to be allocated for an expert witness he renews his request he gets another denial by the by the trial court saying the request is denied for the reasons previously stated he then files and this is I think critical and I really want the court to hone in on this he then files on September 9th a pleading in which and it's referenced in the Court of Appeals decision he files a pleading stating that under ache versus Oklahoma he is entitled to funds to to get a let me ask you this it's not uncommon I imagine it wasn't uncommon in Los Angeles Superior Court and I imagine it's not uncommon in a lot of other state jurisdictions if he'd been represented by counsel for the trial court to ask counsel for some sort of proffer on the relevance of the expert to basically play out the needs right it's that he just because you say well I need 10 experts on these five different issues we're not just gonna get it so some sort of proffer I imagine is not unusual would you agree with that I would say that mr. Crawford's ability to make that proffer was thwarted in numerous instances by the trial courts refusal to even take up the issue and and I think what God don't tell me how well the who blocked him from making a more specific proffer as to the relevancy of his need for a medical expert I think that when the court says that no expert funds are going to be provided to you as long as you represent yourself that's a pretty emphatic denial that's a pretty that's a clear-cut denial that says that under no circumstances are you going to be getting expert funds and you're you're breathing you discussed that the trial court conditioned and looked like more than once a conference access to experts on appointed representation but the whether that was constitutional did they they never got around answering the question they left it open which I think is troubling because they basically passed the buck they said that this is a political question the legislature can get involved in figuring out how a pro se defendant is to be getting expert funds and it's not a political question it's a legal one but that play in at all to our decision on whether or not the Court of Appeals here with unreason the last reason decision was well we think that they made a couple of mistakes one assuming that eight didn't apply to a pro se defendant that was unreasonable second that his requests were insufficient to trigger the protections of a I think the record is replete with mr. and I would disagree judge when that mr. Crawford's requests do I think fall or do qualify under a as as specific requests for a mental health expert but third even if the state court faulted him for not articulating the theory that he ended up presenting at trial and articulated on appeal which is that he was choked he was render semi conscious or unconscious came in and out of consciousness and that that upon regaining consciousness his ability to perceive reality was impaired to the point where he mistakenly believed that the victim was attacking him with deadly force yeah he never quite articulated it to that degree of specificity I take it that your argument is that under a key and called well he doesn't need to well I think suffice that level of detail well I think that the Court of Appeals to debate and switch I think that they put the on the surface at least it sounds like they're applying a but the standard that they're actually applying is more in line with the the rules for giving a notice of expert under Alaska rule of criminal procedure 16 meaning he didn't provide the substance of the experts testimony he didn't give the expert CV I'm not sure that there's any authority for that like if you look at a can you look at McWilliams the standard I mean look at McWilliams the defense counsel simply said you know I want a second opinion right and that was sufficient to trigger ache so I think that the Court of Appeals was applying a standard that doesn't appear in ache and I think they I think was unreasonable to expect that a pro se defendant is going to be able to state you know my theory is that if I you know I'm gonna call a neuropsychologist who's going to testify is to the rule is the pro se defendant is held to the same standard as if he'd been represented right that's that's what judges tell pro se defendants all the time when they elect to represent themselves it's like you are you sure you want to do this because you're gonna be held to the same standard as a lawyer and so if if a lawyer is expected to develop the theory more than that standard presumably would also apply to defendant well and I think this case is unusual in that mr. Crawford was never given the opportunity I think to make that full fleshed out argument because the trial court repeatedly told him that you weren't going to be getting expert funds as long as you're a prisoner any of the standby counsel giving me any kind of they attempted to eat well and that's the thing is that standby counsel was appointed in May and there was an expectation that that standby counsel was going to help them line up expert witnesses by the time I think August 3rd mr. Crawford was complaining that the standby counsel wasn't helping him and that and by the end mr. Crawford on his own had to the request that gets denied repeatedly by the trial court you know we are you know we know we can remember many times admonishing defendants that they shouldn't go pro se but it's ultimately have the right to do it and you know nonetheless we appoint standby counsel because we knew that they couldn't really I think mr. Crawford late their positions clearly right and I think that the respondents position is untenable to the extent that they're saying that well you know you're a pro se defendant you've basically forfeited your right to a fair trial that somehow the protection that the state is off the hook in terms of trying to provide you with a fair trial because you've chosen to represent yourself let me ask you this should it should it make any difference that a pro se defendant may not be entitled I mean is that you know pro se defendant I think it's a gent does that make any difference and whether or not they're entitled to expert witnesses well I think the respond in deciding cases that basically say that if a person has either pro bono counsel they've retained counsel that the state isn't obligated to fund those expert services and we've distinguished those cases because those don't really apply to a case involving a truly indigent defendant somebody who is representing themselves and mr. Crawford ultimately did proceed without the assistance of standby counsel I understand your argument that you think that the state court unreasonably heightened the standard here do you applying the unheightened standard would mr. Crawford still succeed here well I think we're arguing that the Court of Appeals was unreasonable in failing to account for the trial courts actions which if this court finds that mr. Crawford didn't you know sufficiently lay out his theory and why he needed this expert that's attributable to the actions of the trial court and I think the Court of Appeals decision gave short shrift to the actions by the trial court judges in multiple instances where there were trial judges really tried to help them out at one point appointing mr. Polowski yeah tell me what happened with that because I I recall at one point in the record at one of the pretrial conferences when they were talking about whether yet another trial continuance would be necessary I thought either the prosecutor or maybe mr. Polowski indicated that a strangulation expert was in the offing and then it sort of just dropped off is there an indication as to what happened with that they did mr. Polowski go research that and yeah why did it just drop off there were I know that mr. Polowski submitted you know billing required you know compensation for you know time spent trying to locate experts but mr. Crawford explained that he just he didn't get any assistance from mr. Polowski and that mr. Polowski didn't help him in those endeavors and again mr. true was it I'm sorry that wasn't true was it well I think the Court of Appeals quibbled over the fact that mr. Crawford was able to cobble together requests for DNA services expert services but that was that was again without mr. Polowski's assistance to my knowledge and I realize only have two minutes left so I'm going to stand down and the respondent make its case thank you you may it please the court my name is Diane Wendlandt I'm an assistant attorney general with the state of Alaska I now represent respondent Arnaldo Hernandez in this federal habeas appeal there are three reasons why the district court's there is no clearly established federal law requiring Alaska to provide non-psychiatric experts for indigent criminal defendants that can be found in footnote one of Caldwell versus Mississippi where the court specifically says that it has not decided that issue and this court has repeated that in both Jackson versus Ilst and Schrader versus primo the second reason is that there's no clearly established federal law that prevents Alaska from bundling the representation with that representation I need to point out Alaska is unlike a number of states which have appointment of counsel but without the provision of services and so that appointed counsel must come to the court and ask for approval that's what happened in ache that is not what happens in Alaska Alaska has a centralized public defender and office of public advocacy that by statute and funding they have their own budget they do not have to ask for court's approval for experts and so if a an indigent defendant agrees to be represented by counsel that money is there but it is bundled now ache specifically says that it is allowing the state to decide how to provide funding for the psychiatric expert it did not say that it must be separate it did not say that you have to write a check to a self-represented indigent defendant so at this point without anything clear from ache or Caldwell for that matter there's nothing that would prevent the state from bundling those services and then the question finally becomes does bundling in some way impact the right to self-representation and Ferreira makes it very clear that yes a defendant has a right to represent themselves but with that they are waiving not merely the right to counsel but to the traditional benefits of counsel so I don't believe in fact if you look at Cain versus Garcia Esposito the court said no you can't simply argue that this affects my ability to represent myself and so in the country does doesn't it excuse me it does oh I agree that it affects the fairness of the trial there's no question about that but the lack of counsel affects the fairness of the trial and when you have given up that right to have counsel you give up your right to a fair trial you have given up your right to the traditional benefits that come with counsel and there is no dispute that as this court and the US Supreme Court and our courts have said for expert services I'm sorry even though I could understand memory there was no request but even if you ask for services you give up your right to a fair trial because you you're representing yourself that seems counter to Feretta well in Feretta it's very clear the court says when you decide to represent yourself it is extremely unlikely that you're going to have a fair trial because the vast majority of people cannot adequately represent themselves we sometimes appoint standby counsel to make sure that they have some resource to help them that's true and that was done here the problem is that Crawford wanted so much more this really is not a case about gee he wanted one expert couldn't you have written a check that's not the problem here this isn't just about giving him a check and say go find an expert exactly judge Wynn suggested he needed to make some showing this is why I want an expert this is what I need and the court could approve it or not that's correct if a applies here then that's where the Court of Appeals went next apply assuming that it does apply what what type of showing does he need to make well first of all it's clear that although there was a September order saying that these basically these services are bundled if you want funding for your expert you need to accept counsel after that however that was by trial judges handled this case judge Boland briefly took it over Crawford get mr. Crawford again asked for experts and judge Boland said I don't know anything about that you're gonna have to put it in writing and mr. Crawford did not then the case went to judge Arseth and judge Arthur said in response to this again says tell me where you have made a request that I can actually vet you haven't given me enough information to determine who it is that you want me to appoint how much it's going to cost how it's going to fit with your defense now counter to a key and McWilliams a key it's interesting because in a key you have a very specific request for a psychiatrist that fits within the states already have they have further elaborate on that I don't are you saying they have to use the magic word of psychiatrist otherwise there when they put their mental health at issue they get no services what I'm saying is twofold number one if they want something that falls within a ache is very specific in its balancing of Matthews versus Eldridge it talks about the importance of insanity and guilty but mentally ill issues that those are crucial to finding criminal liability and the importance McWilliams was the same thing where basically in McWilliams the court the state provided a psychiatrist or I believe maybe a neuropsychology psychiatrist who did not actually assist he was just objective and did an evaluation but he did not actually provide type of assistance that ache was saying was necessary let me ask you in your briefing you discuss well I guess I want to ask you specifically did the Court of Appeals decision find that Crawford did not request a mental health expert in your view yes what was he asking for he was asking for a medical expert that's what he kept saying and the fact is part of the problem here is that did he wanted a medical expert prior to trial it was not entirely clear and I know counsel has pointed to various places in the trial where it does become clear but this decision was made prior to trial and at that point there were some of the documents show that he was complaining about or raising the idea that he had been choked prior to the shooting if you go back through the thousands of pages he wanted an expert was to to opine on the effects of that if you go back through the record a lot of this was done orally so you have to review the transcript and at the time the trial judge would not have had a transcript but at the time go looking at the record it seems that the record is replete with examples of mr. Crawford asserting the involving his strangulation and loss of consciousness consciousness so I'm trying to figure out why wasn't it unreasonable for the state court to say that he never informed the trial court of the theory of defense because by the time this came to judge Arseth there had been a massive number of written pleadings there had been numerous hearings and through that if you take bits and pieces and you stitch it all together into a quilt you see the big picture but the question is did the trial judge on the eve of trial what he said was look make a written request and that's where this becomes most important is during those November hearings judge Arthas said okay fine make me a written request tell me what you want why you want it what it's gonna cost he knew how to do it he did it with the DNA request I mean I don't remember that a problem might not have because it was not the problem we have here here again but it brings me back to my original point which is he didn't just want money for a medical expert he needed someone to find that medical expert he needed someone to communicate with that expert and to hire that expert he needed an answering machine so if the expert called him he'd know that call came through he was in jail and patients in the record that his last standby counsel mr. Polosky attempted to find him a strangulation so-called strangulation expert the record is not totally clear but there is a reference to the fact that mr. Polosky had charged for two or three hours of time spent looking for what I think is referred to as simply an expert so we don't know what kind of expert whether that was the DNA expert or a strangulation expert and then miss Kerry got involved later but in August it's interesting before the September order in August mr. Crawford fired mr. Polosky and said I understand I don't want any more standby counsel I am going to find my own experts and at that point judge McKay said okay how much time do you need I again what do you want me to do and that's really the question here what was the judge supposed to do this you know at the end of the trial or towards the end of the trial if I read this correct correctly the state made a request that it needed a expert to counter his testimony and the trial judge said wait a minute you knew from the very beginning of this trial that his mental state was going to be an issue now where did judge or if judge Arsis was sort of blind to the record where did he get that well by the end of the trial yes it was absolutely it was really interesting he didn't just say you know during the course of the trial this came up he said from the very get-go and that's from the start you knew state that his metals his mental capacity was going to be an issue and I don't think that was no I'm not gonna do we're not going to take a break to get a to let you get an expert because you knew certainly by the time this trial started they knew but I think that the judge was wrong if he was suggesting that it went all the way back to the beginning of the case maybe I mean because if you look at wrong not that judge Pius was wrong you're saying I'm sorry your honor not you you judge Arsis was wrong and if you look back at judge Arthur's statements in November it's very clear that he's look you've given me these vague ambiguous requests for a medical expert or another type of strangulation expert or something I need something more put it in writing tell me who you want but the problem is and there are several times where judge said look because mr. Crawford kept coming back and saying I want to do this orally and he said no I need you to put it in writing so that I can take this to the administrator and explain what's going on here and at that point he said the problem is mr. Crawford you've been pushing this case really hard and if you want me to do that if you want to put this in writing you're gonna need to take a trial continuance and mr. Crawford said no you said I need to look at the big picture if we step back and look at the big picture it looks like the Court of Appeals in Crawford one noted that this central to Crawford self-defense theory was the effects of strangulation and loss of consciousness on his perception so I guess my question it isn't the Crawford to finding directly contradictory to that no because basically what the Court of Appeals was looking at was in hindsight and in order to decide whether the judges acted improperly pre-trial you have to look at the information available to them and a trial judge prior to trial has very little information beyond the indictment and the pleadings of the parties the judge did not know exactly what this case was about how the prosecution and defense theories would play out he only would know that if mr. Crawford came forward but even coming forward with a theory was not adequate because what again what was the trial judge supposed to do here with this I need a medical expert and you can see judge Arthas Arthas of trying very hard and saying look who is going to find that medical expert for you who is you need to give me something same time I mean it was done in conjunction or wasn't it let me ask you with statements like you can't get an expert because you represent yourself until you unless you agree to have a representation was that correct that was correct that was correct not only factually but you think under the law that that's you can't get an expert unless you you decide that you want not to represent yourself and for non psychiatric experts psychiatric because it seems counter to McWilliams I don't think you're acknowledging you didn't acknowledge it in your brief you're not acknowledging here today why don't you tell me if you don't mind what McMillan what we should take from McWilliams my recollection and maybe I am misremembering your honor my recollection is that McWilliams was provided a I believe it was a neuropsychiatrist although I could be wrong there and that the issue in McWilliams was the fact that this person this expert did not actually play a role in assisting the defendant and that was the problem because it seems in my view that was plainly laid out three triggering conditions which I think arguably were met here for the ache rights to attachment I wanted to give you an opportunity to tell me why why they wouldn't and and that was decided a few months before Crawford too but the state didn't cite to that case or apply that test should we take anything from that I'm not sure I'm following the court of appeals in Crawford to basically to McWilliams at all which seems like it probably could have and should have but I wanted to give you an opportunity to tell me you know that we shouldn't take anything for it for a particular reason or what because it seems like McWilliams laid out three triggering events that that arguably mr. Crawford met but again that brings us back to this is unlike the situation where you ask for a psychiatrist where there are specifically people available to be appointed and you know exactly what needs to be done who needs to be appointed here we have a very ambiguous request for a medical expert there wasn't any request saying who was going to be appointed and there isn't a stable of people but you're I and I understand representing the state here but that the request for the expert was tied to his how he felt at the time evaluate how he felt at the time that this murder had occurred but how he felt at the time I mean that goes to his to his thinking it said he that he was conscious and then if you look at the elements of a first degree or second degree murder it seems like that's relevant you're saying that was not specific enough even despite Williams but what what Crawford asked was not specific enough what he specifically asked for was someone who could talk about the physical effects of being strangled and that's only if you go back and sort of piece together because he would ask for something but then later on he would say oh well here's my defense and again we went through several judges here and even if it had been a single judge it was still a significant period of time and a judge artist has kept coming back and saying please I'm willing to reopen this issue even after Judge Smith's order but you have to put something in writing that I can vet and I don't have that right now and you could not expect the trial judge to go back and search through the thousands of pages of pleadings and all of the hearings to sort out whether there was a sufficient request I think what you're arguing is that that right there what you just laid out that mr. that judge our Seth requesting it in writing and the need to have it in writing supersedes McWilliams depending on your reading of McWilliams yes because there has to be something specific and I don't believe that saying to mr. Crawford look you keep saying things and I don't know what you're trying to do and you you keep expecting me to read your mind just put it in writing I will review it but you're gonna need a trial continuance but you're not saying that it has to be in writing had he made an oral proffer that counsel would have made that would be sufficient under the Supreme Court case law wouldn't it it would I assume it would but the problem is his proffers were not specific enough and to make matters worse they were so spread out and to bits and pieces I don't think it's improper for a judge to say look under these circumstances where judge arsis had experience with mr. Crawford he knew how these things went with mr. Crawford and he had trouble penning down in hearings what exactly mr. Crawford wanted so under those circumstances it was reasonable for the judge to say fine I'm not gonna do this orally anymore put it in writing if there any place in the record where the judge sort of teased out from mr. Crawford what it why he wanted a medical expert like you know well why why can't why mr. Crawford do you think you need a medical expert or whatever kind of expert you want I don't believe that that's in line to me what it is you you've got in mind and there's one point in there where he says he says to is about an ex-party situation he says don't don't don't go too far don't say too much because the state's right here that was so you don't want to you don't want to you know you don't want to reveal your defense I mean it seems like what the judge should have done was and this is not doesn't really play but you know he could have said well you know we're gonna go ex-party and you can tell me what what this is all about and and there are many places where things could have been done differently here yeah I understand that but the question is not could it have been done that's right that's that's I want to assure you I understand that we so at this point this record as it is exactly and the question becomes did the trial court and the Court of Appeals violate clearly established federal law in handling the situation as they did exactly exactly or unreasonably determine the facts exactly that is the standard here and for the reasons stated in my brief and here today I believe that the defense has not met that if mr. Crawford has not met that standard and even though he repeatedly told the trial court or informed the trial court that he was he was concerned and he wanted to expert because he was being choked unconscious and he did not really know how many times he came in and out of consciousness and he testified he had different perception of the facts as a result of being held unconscious for a year and after being choked unconscious and after coming to and stumbling outside apparently there was a lot of references or I don't know maybe you dispute that kind of look at some of the different record sites where he says he wanted the expert because he was coming he would become in and out of consciousness and wasn't sure what he was thinking so you don't think that put his that was specific enough and he and in your view he needed to put it in writing it was not specific enough whether it was put in writing or not that is a separate question because just our thesis was saying I am willing to relook at all of this that's when the request for putting it in writing came and that's when mr. Crawford said I don't want to continuance I'm considering this done what happened earlier I'm sorry I'm way past I'm sorry I take I've taken you out of time if you want to make a concluding statement you can okay just briefly in conclusion under the facts of this case first it was not unreasonable for the state trial court to refuse to apply ache to a request for non-psychiatric expert second it was not unreasonable for the state trial court to enforce Alaska's decision to bundle traditional benefits of representation with representation itself and finally in any event it was not unreasonable for the state appeals court to find that Crawford failed to make an adequate request for expert funding in this case for these reasons respondent asks this court to affirm the district courts denial of federal habeas relief thank you so much thank you so if you can first address don't what I think is the is your counsel caught your client's request was not specific right and if you read the Alaska Court of Appeals decision you would think that that was the reason why mr. Crawford's requests were denied the fact is if you look at the trial court record it is not the case that the trial court denied mr. Crawford access to expert funds because his requests were vague or too unspecific the fact is that he was denied access to expert funds because he was representing himself and I would 2009 at a hearing before judge McKay in which judge McKay and this is conceded by the respondent that that mr. Crawford would be entitled to expert funds under administrative rule 12 v5 there was some confusion there because it's a chicken and egg thing between different trial judges as to well how do you get these funds and you're representing yourself but ultimately he was appointed stand by counsel let me just after you just as a practical matter I think I have to say share some of the trial judges frustration going through this record as a practical matter he's incarcerated he's chosen to represent himself right the judge appointed stand by counsel to try to assist him in pre trial matters including searching for the experts that he wanted what should a trial judge do under the circumstances the trial judge isn't going to go out there and interview and gather the experts for him at some point with repeated continuances he's got to come up with names CVs and that ultimately was why his notice of expert was really stricken so I would I think appointing standby counsel was just about the most practical thing that the trial court could have done under the circumstances no so his standby counsel abandoned him that's important but the point is that when and actually I think we've actually overlooked something about the trial record which is that the Court of Appeals said like well mr. Crawford didn't make a sufficient showing that he you know the trial court found that it wasn't relevant to the case right so we would disagree with that because when mr. Crawford initially asked for expert services in September I'm sorry in August and then again in September the orders that he got he fired mr. Palouse mr. Polanski was searching for an expert I think there was some indication that he had billed for searching for an act experts but he billed for hours spent searching right and then whatever what what came of that looking for an expert right but what came of that is non-existent I don't see anything in the record that says that mr. Polanski actually followed through all I can say is that he billed like 1.7 hours I think for those services but mr. Crawford made it very clear that mr. Polanski was not assisting him in his endeavors and the filing for DNA expert was something that Mr. Crawford cobbled together on his own and the initial response and I can't stress this enough the initial response in the order that judge Arseth affirmed because judge Arseth refers back to judge Smith's ruling and says like well judge Smith made this ruling judge Smith's ruling is you're not getting expert funds buddy you're not gonna get expert funds because the court system has limited funds you're eligible for court-appointed counsel you're not getting this money and that is the effect and this record showed that mr. Crawford was trying to reach out in an attempt to secure experts all the way up until the trial well I'd call attention to the pleading that he filed on August I'm sorry September 9th it's the affidavit and request for expedited hearing on funding of necessary expert and defense right necessary defense services he asserts under it versus Oklahoma that he's entitled to public funding for necessary investigative and expert witness services he points out that the court had previously said you could get funds to administrative rule 12e and that now the court is implying that those funds are not available he gets no he gets no response to that what should have happened is district court or the trial court should commit to the I'm just trying to think like as a practical matter what you want to see happen and then go back and see whether the law dictates that he has that right so you're saying what should have happened as a practical matters the court has to commit to certain fund first to say okay now I'm gonna authorize $5,000 good luck do the best you can from prison to try to interview an expert and then tell me who that expert is make a proffer provide the CV etc to the prosecution could then secure rebuttal expert that's what should have happened right I think the preliminary I think mr. Crawford's ability to make that preliminary showing that that sort of need got sidetracked it got derailed by the fact that the court was hung up on where's this money going to be coming from and that's I think what ended up resulting in this confusing trial record because nobody knew so what case law from the Supreme Court dictates that that procedure that the trial court has to commit the funds to him first in order to assist them as a practical matter I understand why mr. Crawford was struggling when you call up experts and then you try to get them to to support your theory of the case well I'm funds would have to be committed that would make it easier for him to secure an expert I just don't see any authority from the Supreme Court saying that that has to be the procedure employed by the state well procedural questions aside ache is about access to justice right it's about the you know fundamental fairness it's not about and contrary to what the respondent argues it's not about right to counsel ache is not a Sixth Amendment right to counsel case it's about sort of the just the basic building blocks the tools that you need to mount a defense and to the extent that the Court of Appeals and the trial court were preoccupied with the procedural make you know the mechanical aspects of trying to get money appointed it had the effect of totally denying and thwarting mr. and depriving mr. Crawford of his constitutional rights that's that's the effect of the Court of Appeals ruling and that's the reason why we're saying it's unreasonable and the state says that this administrative part of this and trying to get the funds that that was not unreasonable I guess for the state trial for this the state Court of Appeals to say that because of all of the complications that judge wind just went through that that was sufficient reason to not be able and because people forgo certain expectations of how fair the trial is going to be when they're going to represent themselves well how do you how do we balance that because it is a difficult question here I do sympathize with that with the judge or the and the judges who I think we're trying to figure out this process so what do we do with that well I think bottom line the trial court needs to be consistent and there are conflicting rulings in this case in the sense that he gets shot down by one judge later and I'm sorry first he gets a judge who says we'll commit some we goes in front of a different judge he gets shot down now the sponsor and available by the time he comes around to the November 2nd hearing and he's bringing the issue up the trial courts or in the trial courts judge Arces language to him is there's never been any front there was never a promise to Mr. Crawford that he was going to get funding I try to wrap your mind around that he's a pro se defendant and apparently he has I mean apparently the much sort of knowledge about the mechanics of ache as as Mr. Crawford does there's really I mean these inconsistent rulings I think had the effect of thwarting his ability to get you know for his constitutional rights to be protected I think that's the fundamental problem that's the issue that the Court of Appeals glossed over in its analysis the trial court needs to be consistent you know I realize it pro se cases are difficult and certainly there's difficult you know issues about funding that shouldn't be a justification or an excuse to basically terminate a person's due process rights so does there need to be a clear ruling from the Supreme Court on this issue that judge Wynn was asking you about no I mean because again it's about access to justice did the Alaska Court of Appeals did the Alaska court system give mr. Crawford access to justice under a right right or McWilliams or both right and Faretta certainly because right okay I will leave it at that and I thank you thank you very much this is very interesting and challenging case really appreciate both your oral argument presentations the case of United States I'm sorry keen Alexander Crawford versus Arnaldo Hernandez is submitted
judges: MURGUIA, PAEZ, NGUYEN